SKC

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shaykh Muhammad Abdul Aziz Khalid Bin Talal Al Saud,<br><br>  Plaintiff,<br><br>v.<br><br>Mark Lamb, et al.,<br><br>  Defendants. | No.  CV 18-04890-PHX-SPL (JFM)<br><br>**ORDER** |

Plaintiff Shaykh Muhammad Abdul Aziz Khalid Bin Talal Al Saud, who is currently confined in the Arizona State Prison Complex-Eyman in Florence, Arizona, brought this civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA).  Defendant Pinal County Jail Chaplain Michael Whitaker has filed a Motion to Dismiss (Doc. 27).  Plaintiff was informed of his rights and obligations to respond (Doc. 28), and he opposes the Motion.  (Doc. 31.)  Also before the Court is Plaintiff's Motion for a Hearing (Doc. 33).

The Court will grant in part and deny in part the Motion to Dismiss and deny the Motion for a Hearing.

**I.  Background**

On screening of Plaintiff's three-count Complaint pursuant to 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated First Amendment Free Exercise, RLUIPA, and state law claims in Count Two and First Amendment Free Exercise and Fourteenth

Amendment Equal Protection claims in Count Three against Defendant Chaplain Whitaker[1] and directed Defendant Whitaker (hereinafter "Defendant") to answer these claims. (Doc. 8.) The Court dismissed the remaining claims and Defendants. (*Id.*)

Defendant has moved to dismiss on a number of grounds, including that Plaintiff failed to exhaust his administrative remedies before filing this action.

## II. Federal Rule of Civil Procedure 12(b)(6)

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted). To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where the plaintiff is a pro se prisoner, the court must "construe the pleadings liberally and [] afford the petitioner the benefit of any doubt." *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010).

As a general rule, when deciding a Rule 12(b)(6) motion, the court looks only to the

---

[1] In his Complaint, Plaintiff identified Defendant Whitaker only as "Chaplain Mike," which is how the Court identified Defendant in its Screening Order.

face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). If a court considers evidence outside the pleading, it must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). A court may, however, consider documents incorporated by reference in the complaint or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. *Id.*

**III.    Defendant's Motion to Dismiss**

    **A.    Exhaustion**

        **1.    Legal Standard**

Under the PLRA, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

In a limited number of cases, the failure to exhaust may be clear from the face of the complaint; however, "such cases will be rare because a plaintiff is not required to say anything about exhaustion in his complaint." *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014); *see Jones v. Bock*, 549 U.S. 199, 216 (2007) (failure to exhaust is an affirmative defense and a prisoner is not required to plead or demonstrate exhaustion in the complaint). In the rare case where failure to exhaust is clear from the face of the complaint, the defendant may move to dismiss under Rule 12(b)(6). *Albino*, 747 F.3d at 1169. To properly be considered on a Rule 12(b)(6) motion, the nonexhaustion defense must raise no disputed issues of fact. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984)

1 (affirmative defense may be raised by motion to dismiss only if "the defense raises no
2 disputed issues of fact"). Typically, to show that a prisoner has failed to exhaust remedies,
3 a defendant will have to present probative evidence on a motion for summary judgment
4 under Rule 56. *Albino*, 747 F.3d at 1169.

**2. Discussion**

Defendant argues that it is clear that Plaintiff failed to exhaust his administrative remedies because Plaintiff checked the boxes on the form Complaint, Count Two, indicating that he had filed an administrative remedy but did not appeal his issue to the highest level, which he explained was due to an "error in the system" and because he was not allowed "to challenge any decisions by Lt. Hull." (Doc. 27 at 4; Doc. 1 at 6−7.) Defendant first cites to inapposite case law regarding pleading standards, which do not apply here because Plaintiff is not required to say anything about exhaustion in his Complaint, to argue that Plaintiff's averment that he was prevented from filing a grievance appeal cannot be accepted as true, presumably because Plaintiff fails to allege sufficient facts to support this assertion. (Doc. 27 at 5.) This argument is fundamentally flawed and not well taken. Defendant fails to apprehend, as an initial matter, that Plaintiff was not required to plead or demonstrate exhaustion. *See Albino* 747 F.3d at 1169; *Jones*, 549 U.S. 199 at 216. Defendant's argument is additionally illogical because Defendant at once attempts to rely on Plaintiff's averment that he did not file a grievance appeal to definitely establish a failure to exhaust, and, at the same time, argues that the Court must ignore Plaintiff's averment that he was prevented from filing an appeal, which plausibly shows that administrative remedies were unavailable. The Ninth Circuit has recognized numerous instances where remedies may be rendered effectively unavailable and a prisoner is excused from the PLRA exhaustion requirement. *See e.g., Nunez v. Duncan*, 591 F.3d 1217, 1224–26 (9th Cir. 2010); *Marella v. Terhune*, 568 F.3d 1024, 1027–28 (9th Cir. 2009) (per curiam).

Defendant also argues that, even if there was an error in processing Plaintiff's Grievance, as Plaintiff claims, because Plaintiff filed his Grievance on December 6, 2018,

and he dated his Complaint December 13, 2018, only seven days later, Plaintiff did not wait five full workdays for a response, as required by jail policy. (Doc. 27 at 5; *see* Doc. 1 at 8.)[2] Defendant appears to argue that, because jail staff had five full workdays to respond to Plaintiff's Grievance, Plaintiff could not have received a response, attempted to appeal that response, and been prevented from doing so in less than five full workdays. (*Id.* at 5.)[3] But even construing this argument, Defendant presents no compelling reasons why this sequence of events could not have taken place in less than five full workdays, if, for example, jail staff took less than the allotted time to respond to Plaintiff's Grievance.

Most problematically, Defendant's arguments rely on extrinsic evidence that the Court cannot consider on a motion to dismiss. To establish the date of Plaintiff's Grievance, for instance, Defendant relies solely on an internal Pima County Jail memo, not any actual Grievance[s] referred to in the Complaint. (*See* Doc. 27-1 at 29.) This memo, from an unknown staff member to Defendant, inquires if Defendant had "heard about" or was "dealing with" an Inmate Complaint Plaintiff filed on December 6, 2018, in which Plaintiff complained that he had filed many requests for religious accommodations since October 24, 2018. (*Id.*) This memo is not incorporated by reference in the Complaint or a matter of judicial notice that the Court can consider without converting Defendant's Rule 12(b)(6) Motion into a Rule 56 motion for summary judgment. And even if the Court could do so, factual issues would nonetheless remain about whether the date ascribed to Plaintiff's Grievance in the memo is accurate and whether Plaintiff may have filed other,

---

[2] To demonstrate this requirement, Defendant relies on the Pinal County Sheriff's Office's Inmate Grievance Procedures, which he included as an exhibit to his Motion to Dismiss, but he does not request judicial notice of these policies, and he has made no showing that these policies are attached to or relied upon by the Complaint or a matter of public record of which the Court can take judicial notice.

[3] Defendant italicizes the word "full," presumably to argue that, although there were, in fact, five workdays between December 6 and December 13, 2019, these could not have been *full* workdays. This argument can only be based on the unfounded assumption that Plaintiff filed his Grievance later in the day on December 6, 2018 than when he filed his Complaint on December 13, 2019, such that five *full* workdays had not yet elapsed. Apart from being convoluted, this argument relies on an unsupported assumption as well as facts external to the Complaint.

- 5 -

previous grievances on the same issue, which he was prevented from appealing before filing this action.

In short, Defendant has not shown that this is one of those rare cases in which the failure to exhaust is clear from the face of the complaint. Moreover, Defendant's arguments are convoluted, disregard applicable Federal Rules of Procedure and Evidence, and misapprehend established case law regarding exhaustion. *See Albino* 747 F.3d at 1169; *Jones*, 549 U.S. 199 at 216; *Scott*, 746 F.2d at 1378.[4] The Court will deny Defendant's Motion to Dismiss on non-exhaustion grounds.

### B.     State Actor Requirement

Defendant next argues that this entire action must be dismissed under Rule 12(b)(6) because Plaintiff did not allege in the Complaint that "Chaplain Mike" is a state actor or acted under state law, as required to bring a § 1983 action. (Doc. 27 at 6.)

The standard for dismissal under Rule 12(b)(6) is identical to the standard applied on screening under § 1915A(b) ("fail[ure] to state a claim upon which relief may be granted"). Because the Court screened Plaintiff's First Amended Complaint under this standard, Defendant's arguments that Plaintiff fails to state a claim against him are not appropriate except in a motion for reconsideration. *See Murray v. Corr. Corp. of Am.*, CV 11-2210-PHX-RCB (JFM), 2012 WL 2798759 (D. Ariz. July 9, 2012) (Rule 12(b)(6) motion to dismiss almost never appropriate when the court has screened a prisoner complaint pursuant to § 1915A(b)).

Alternatively, even considering these arguments, the Court finds no basis for reconsideration of its Screening Order. Defendant appears to rely merely on the absence of the words "state actor" or "acted under color of state law" in relation to Defendant in Plaintiff's Complaint. But such explicit language is not required. To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*,

---

[4] Defense Counsel is reminded of their obligation under Federal Rule 11(b)(2) to certify after reasonable inquiry that their defenses and legal contentions are warranted by existing law and are nonfrivolous.

556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Additionally, where the plaintiff is a pro se prisoner, the court must "construe the pleadings liberally and [] afford the petitioner the benefit of any doubt." *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010). Dismissal is also unwarranted "merely because [the] plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." *Pruitt v. Cheney*, 963 F.2d 1160, 1164 (9th Cir. 1991) (quoting 5A C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 336−37 (1990)).

Here, Plaintiff alleged that Defendant is a Chaplain at the Pinal County Jail; Plaintiff made requests of Defendant for a religious diet, which Defendant denied; and Plaintiff made additional religious-based requests of Defendant, including that the Jail offer Muslim religious services akin to those provided for detainees of other faiths, which Defendant also denied. (Doc. 1 at 2, 6, 7.) Taken as true, these allegations show that Defendant acted under color of state law by providing chaplaincy services to Pinal County detainees and by responding to and deciding detainees' requests for religious accommodations. This would be the case even if Defendant is not directly employed by Pinal County.[5] A person is said to act "under color of state law" when his "official character is such as to lend the weight of the State to his decisions." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). Thus, a person may be sued as a "state actor" where he or she willfully participates in "joint activity" with the state. *Id.* at 941 (quoting *United States v. Price*, 383 U.S. 787, 794 (1966) ("To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the state or its agents.")); *see, e.g.*, *West v. Atkins*, 487 U.S. 42, 54 (1988) (finding a private physician a state actor where

---

[5] Defendant does not dispute that he was employed by Pinal County, as the pleadings seem to indicate; instead, he argues only that Plaintiff's claims against him fail because Plaintiff did not explicitly allege that he was a state actor or that he acted under state law.

1 he was hired by a state prison to provide medical care to inmates); *c.f. Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 (9th Cir. 2011) (applying both "joint participant" and "public function" analyses to a plaintiff's RLUIPA claims against a private religious organization providing services to prisoners).

Defendant's argument that Plaintiff did not sufficiently allege that Defendant was a state actor for purposes § 1983 is without merit, and the Court will deny the Motion to Dismiss on this basis.

### C.     Count Two

Defendant next argues that Plaintiff's religious diet-based claims in Count Two fail as a matter of law because Plaintiff did not allege any facts showing that Defendant had authority over the Jail's religious diet plans or the ability to make or alter these plans. (Doc. 27 at 7.)  Defendant misconstrues the nature of Plaintiff's claim in Count Two.  In its Screening Order, the Court noted that Plaintiff had not stated any *official capacity* claims against any Defendants because he had not alleged that his injuries resulted from a policy, practice, or custom of the County. (*See* Doc. 8 at 3 n.1.) The Court therefore evaluated Plaintiff's claims solely as individual capacity claims, which require, instead, showing that "the individual was personally involved in the deprivation of his civil rights." (*See id.* (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).)

The Court also already found on screening that Plaintiff stated individual capacity claims against Defendant in Count Two.  Therefore, Defendant once again merely seeks reconsideration of the Court's Screening Order; moreover, he has not shown that the Court's finding that Plaintiff alleged enough facts to sue Defendant in his individual capacity was in error.  Quite simply, Plaintiff's individual capacity claims against Defendant do not require Plaintiff to show that Defendant was responsible for creating or changing Pinal County's religious diet policy.  Instead, these claims arise from Defendant's personal interactions with Plaintiff and his alleged denials of Plaintiff's requests for Muslim religious accommodations in disregard of Plaintiff's sincerely held religious beliefs. (*See* Doc. 1 at 6.)

Defendant next argues with respect to Count Two that Plaintiff's allegations do not support First Amendment and RLUIPA claims because the First Amendment and RLUIPA do not entitle Plaintiff to a halal diet, as he seeks, but only to a diet that does not require him to violate his religious beliefs. (*Id.* at 7.) Defendant overlooks that Plaintiff alleged that his sincerely held religious beliefs require him, among other things, to "only eat[] halal foods." (Doc. 1 at 6.) Plaintiff additionally alleged that Defendant erroneously claimed that kosher and halal meals are the same and "refuse[d] to see [Plaintiff's] sincerely held religious practi[ces]" and to honor his dietary requests "thus compelling [him] to not fully practice [his] faith." (*Id.*) Defendant merely attempts to attack the merits of Plaintiff's claims and to introduce factual disputes about the scope of Defendant's authority or lack thereof to respond to Plaintiff's religious diet requests, which is not a ground for dismissal at the motion to dismiss stage. (*See* Doc. 27 at 8.)

Defendant argues more particularly with respect to Plaintiff's RLUIPA claim that this claim must be dismissed because RLUIPA does not provide for individual liability against government employees or for money damages. (*Id.*) Defendant is correct. *See Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) ("there is nothing in the language or structure of RLUIPA to suggest that Congress contemplated liability of government employees in an individual capacity."); s*ee also Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007), overruled on other grounds by *Sossamon v. Texas*, __ U.S. __; 131 S. Ct. 1651, 1658−60 (2011) ("RLUIPA . . . cannot be construed as creating a private right of action against individual defendants for monetary damages."); *Harris v. Schriro*, 652 F. Supp. 2d 1024, 1030 (D. Ariz. 2009) (following the Fifth, Seventh, and Eleventh Circuits and dismissing plaintiffs' individual damages claims under RLUIPA); *Pugh v. Goord*, 571 F. Supp. 2d 477, 506−507 (S.D.N.Y. 2008) ("RLUIPA does not provide for the availability of money damages against defendants in their individual capacities."). Consequently, Plaintiff cannot sue Defendant in his individual capacity for money damages under RLUIPA, and the Court will dismiss Plaintiff's RLUIPA claim in Count Two.[6]

---

[6] The Court already found on screening that Plaintiff had not stated official capacity

Lastly, with respect to Count Two, Defendant argues that Plaintiff's state law claim based on Arizona Revised Statutes § 41-1493 must be dismissed because § 41-1493.01 only applies to "the state or any agency or political subdivision of the state" and not to individuals, such as Defendant. (Doc. 27 at 7−8.) This is also correct. Section 14-1493.01 provides that a "government shall not substantially burden a person's exercise of religion." Ariz. Rev. Stat. Ann. § 41-1493.01. Further, "government" is statutorily defined in this context to include "this state and any agency or political subdivision of this state," not individual state actors. *See id.* at § 41-1493(3). The Court did not separately discuss Plaintiff's § 41-1493.01 claim in its Screening Order, and it will now dismiss that claim against Defendant as unauthorized under Arizona law.

### D.     Count Three

Defendant argues that Plaintiff's First Amendment free exercise and Fourteenth Amendment equal protection claims in Count Three must be dismissed because they are based on Defendant's alleged denial of various religious items and services to Plaintiff, despite the provision of similar items and services to detainees of other faiths, and there is no requirement that jails provide the items Plaintiff requested or that adherents of all faiths be treated exactly the same. (Doc. 27 at 9−11.) Defendant also argues that Defendant was not responsible for procuring these items for Plaintiff at his own expense and Defendant did not have authority to create or change Jail policy. (*Id.*)

Defendant's arguments do not compel the Court to reconsider its Screening Order as to Plaintiff's claims in Count Three. Defendant argues in conclusory fashion that, because there are no constitutional requirements that prisoners be provided the precise items Plaintiff requested, such as a Quran or a kufi cap, Plaintiff cannot state a free exercise claim as a matter of law. (Doc. 27 at 9.) The cases Defendant cites, however, are fact-specific and rest on a number of variables—such as the extent of demand for a particular religious accommodation, whether prisoners seek to have religious items provided "free of

---

claims against any Defendant. (Doc. 8 at 1.) Additionally, the Court found that any claims solely for injunctive relief were mooted by Plaintiff's transfer out of Pinal County custody. (Doc. 8 at 7.) Therefore, Plaintiff's RLUIPA claim should have been dismissed.

charge," and whether the requested religious items or services are otherwise available to prisoners such as through donations from religious organizations. Defendant appears to claim, without discussion, that these fact-based analyses all apply equally here and require outright dismissal of Plaintiff's claims. (*See id.* at 9, 11.) But these cases do not, as Defendant claims, defeat Plaintiff's claims "as a matter of law." And any further factual development would necessarily rely on extrinsic evidence and raise questions of fact and that cannot be addressed on a motion to dismiss.

Defendant makes similarly unavailing arguments with respect to Plaintiff's equal protection claim, and he additionally argues that this claim must be dismissed because Plaintiff did not allege discriminatory animus, as required to state an equal protection claim. (*Id.* at 10−11.) This argument also lacks merit. Plaintiff alleged in Count Three that he asked Defendant why the Jail did not allow Muslim religious services or provide Muslim holy materials but provided "other" services and holy materials, and Defendant "became irrate [sic] an[d] stated it's the law Christian and told me he'll give me a Bible and that's it[,] nothing else." (Doc. 1 at 7.) He also alleges that Defendant showed "deliberate[] racism" and caused Plaintiff "not to fully be[] able to practice [his] faith." (*Id.*) These allegations permit the "reasonable inference" that Defendant acted with discriminatory animus and "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Iqbal*, 556 U.S. at 678; *Erickson*, 551 U.S. at 93.

The Court will deny the Motion to Dismiss as to Plaintiff's First and Fourteenth Amendment claims in Count Three.

### E.   Qualified Immunity

Defendant also argues that this action must be dismissed because he is entitled to qualified immunity. (Doc. 12 at 11−13.) Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding if qualified immunity applies, the Court must determine: (1) whether the facts alleged show the defendant's conduct violated a

1  constitutional right; and (2) whether that right was clearly established at the time of the
2  violation. *Pearson v. Callahan*, 555 U.S. 223, 230-32, 235-36 (2009) (courts may address
3  either prong first depending on the circumstances in the particular case).

4  Where, as here, the Court has already determined that Plaintiff has stated
5  constitutional claims, qualified immunity depends on the second prong: whether the right
6  at issue was clearly established. This question must be determined "in light of the specific
7  context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. Thus,
8  "the contours of the right must be sufficiently clear that at the time the allegedly unlawful
9  act is [under]taken, a reasonable official would understand that what he is doing violates
10 that right;" and "in the light of pre-existing law the unlawfulness must be apparent."
11 *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (quotations omitted). Regardless of
12 whether the constitutional violation occurred, the officer should prevail if the right asserted
13 by the plaintiff was not "clearly established" or the officer could have reasonably believed
14 that his particular conduct was lawful. *Romero*, 931 F.2d at 627.

15 Defendant does not define the right at issue in the specific context of Plaintiff's
16 claims. Instead, he merely cites to a string of cases in which courts have granted qualified
17 immunity regarding religious rights claims. (Doc. 27 at 12−13.) Defendant merely
18 attempts to show as "a broad general proposition" that he is entitled to qualified immunity
19 without addressing the specific facts alleged in this case. As noted, this is insufficient to
20 establish a qualified immunity defense, *see Saucier*, 533 U.S. at 201, and the Court will
21 deny the Motion to Dismiss on qualified immunity grounds.

22 **G.   Declaratory Relief**

23 Defendant lastly argues that Plaintiff's claims for declaratory relief should be
24 dismissed as moot due to Plaintiff's transfer to another correctional facility. Defendant
25 misconstrues Plaintiff's prayer for relief as a separate claim. "[T]he demand is not itself a
26 part of the plaintiff's claim." *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002); *see*
27 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1255 (3d ed.
28 2016). Whether and to what extent Plaintiff is entitled to damages should he prevail on his

remaining claims in this action has no bearing on whether he states a claim, and is not, itself, a reason to dismiss any claims. Requiring no cognizable action from the Court, this request is denied.

**IV.     Plaintiff's Motion for a Hearing**

In his Motion for a Hearing, Plaintiff requests a hearing on Defendant's Motion to Dismiss "due to facts . . . not fully being express[ed] in matter Plaintiff believes Court can make an[] intelligent decision." (Doc. 33 at 1.) Plaintiff specifically claims, in apparent reference to Defendant's non-exhaustion defense, that "Defendants did deliberately hinder Plaintiff from accessing the Kios system at Jail." (*Id.*)

The Court will deny Plaintiff's Motion for a Hearing because Defendant's Motion to Dismiss was already fully briefed (*see* Docs. 31, 32), and facts outside the allegations in the Complaint are neither required nor permitted for the Court to rule on this Motion. As discussed, Defendant's non-exhaustion argument and other asserted bases for dismissal must be decided on the face of the Complaint as well as any documents attached to or specifically referenced therein.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is **withdrawn** as to Defendant Whitaker's Motion to Dismiss (Doc. 27) and Plaintiff's Motion for a Hearing (Doc. 33).

(2)     Defendants' Motion to Dismiss (Doc. 27) is **granted in part** as to Plaintiff's state law and RLUIPA claims against Defendant in Count Two, and these claims are **dismissed**; the Motion is otherwise **denied**.

(3)     Plaintiff's Motion for a Hearing (Doc. 33) is **denied**.

Dated this 17th day of April, 2020.

Honorable Steven P. Logan
United States District Judge